IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

TREMANE D. CARTHEN, #221052,   )
                                 )
         Plaintiff,          )
                                 )
      v.                    )         CASE NO. 2:10-CV-334-WKW
                                 )               [WO]
                                 )
D. T. MARSHALL, *et al.*,         )
                                 )
        Defendants.      )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

This 42 U.S.C. § 1983 action is before the court on a complaint filed by Tremane D. Carthen, challenging the adequacy of medical treatment provided to him during a prior term of incarceration at the Montgomery County Detention Facility.  The defendants remaining in this cause of action are D. T. Marshall, the Sheriff of Montgomery County, Alabama, Derrick Cunningham, Chief Deputy Sheriff of Montgomery County, Alabama, Dr. Johnny E. Bates, Nicole Hughley and Laura Strickland, medical personnel employed by Quality Correctional Healthcare and assigned to the Montgomery County Detention Facility.  Carthen seeks monetary damages for the alleged violations of his constitutional rights.

The defendants filed special reports and relevant supporting evidentiary materials, including affidavits and medical records, addressing Carthen's claims for relief.  Pursuant to the orders entered in this case, the court deems it appropriate to construe the

aforementioned reports as motions for summary judgment.  *Order of June 28, 2010 - Doc. No. 46*.  Thus, this case is now pending on the defendants' motions for summary judgment. Upon consideration of these motions, the evidentiary materials filed in support thereof and the plaintiff's responses, the court concludes that the defendants' motions for summary judgment are due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed. R. Civ. P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[1]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine

---

[1] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions."  Fed. R. Civ. P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word – genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id*. "'Shall' is also restored to express the direction to grant summary judgment."  *Id*.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities [and medical personnel]. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary

judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted).  Consequently, to survive the defendants' properly supported motions for summary judgment, Carthen is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Fed. R. Civ. P. 56(e).  "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted."  *Id.* at 249-50.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)."  *Walker v. Darby*, 911 F.2d 1573, 1576-77 (11th Cir. 1990).  Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment.  *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions . . . , in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory

4

allegations is not sufficient to oppose summary judgment . . . .").  Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the *prima facie* case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case.  *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of the Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt

5

as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-24 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact.  *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.  In this case, Carthen fails to demonstrate a requisite genuine dispute of material fact in order to preclude summary judgment.  *Matsushita*, *supra*.

### III.  DISCUSSION

6

**A.  Suit Against the Defendants in Their Official Capacities - Absolute Immunity**

To the extent Carthen sues the defendants in their official capacities, they are immune

from monetary damages.[2]  Official capacity lawsuits are "in all respects other than name, .

. . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  "A

state official may not be sued in his official capacity unless the state has waived its Eleventh

Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89,

100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's

immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134

L.Ed.2d 252 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr*

*v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress

has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from

claims brought against them in their official capacities." *Lancaster v. Monroe Cnty.*, 116

F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that the defendants are state actors entitled to

sovereign immunity under the Eleventh Amendment for claims seeking monetary damages

from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Dep't*

*of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Williams*, 862 F.2d 1471 (11th

---

[2] Under all facets of Alabama law, a county sheriff, his jailers and a jail's medical staff act as state
officers "when supervising inmates and otherwise operating the county jails." *Turquitt v. Jefferson Cnty.,*
*Alabama*, 137 F.3d 1285, 1289 (11th Cir. 1998); *see* Ala. Const. Art. V, § 112 (designates sheriff and, by
extension, his staff as members of State's executive department); *see also Parker v. Amerson*, 519 So.2d 442
(Ala. 1987) (county sheriff is executive officer of the State).

Cir. 1989).

### B. Sheriff D. T. Marshall and Chief Deputy Derrick Cunningham

Carthen alleges that defendants Marshall and Cunningham failed to intervene regarding the medical treatment provided to him by health care professionals. *Complaint - Doc. No. 1* at 4. Specifically, Carthen maintains that Marshall and Cunningham should have directed the jail's medical staff to undertake a different course of treatment in managing his pain. *Id*. The claims made against defendants Marshall and Cunningham entitle Carthen to no relief as

> [t]he law does not impose upon correctional officials a duty to directly supervise health care personnel, to set treatment policy for the medical staff or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional wrong. *See Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977) (a medical treatment claim cannot be brought against managing officers of a prison absent allegations that they were personally connected with the alleged denial of treatment). Moreover, "supervisory [correctional] officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care. *See, e.g., Durmer v. O'Carroll*, 991 F.2d 64, 69 (3rd Cir. 1993); *White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988)." *Williams v. Limestone County, Ala.*, 198 Fed.Appx. 893, 897 (11th Cir. 2006).

*Cameron v. Allen, et al.*, 525 F.Supp.2d 1302, 1307 (M.D. Ala. 2007).

To the extent Carthen seeks relief from defendants Marshall and Cunningham for the treatment provided by medical personnel at the Montgomery County Detention Facility due to their position with the county, assuming *arguendo* these defendants exerted some authority

over the manner in which those persons responsible for the provision of medical treatment rendered such treatment, the law is well settled "that Government officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of *respondeat superior* [or vicarious liability]. . . . *Robertson v. Sichel,* 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ('A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties'). Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937, 1948 (2009); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) ("[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."); *Marsh v. Butler County*, 268 F.3d 1014, 1035 (11th Cir. 2001) (A supervisory official "can have no respondeat superior liability for a section 1983 claim."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir.2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999), citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability.). "Absent

9

vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677, 129 S.Ct. 1949. Thus, liability for medical treatment provided to Carthen could attach to defendants Marshall and Cunningham only if they "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [their] actions . . . and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360.

Carthen, however, has presented no evidence sufficient to create a genuine issue of disputed fact with respect to his claim of deliberate indifference by defendants Marshall and Cunningham. There is nothing before the court which indicates that these defendants personally participated in or had any involvement, direct or otherwise, with the medical treatment provided to Carthen during his confinement at the Montgomery County Detention Facility; rather, it is undisputed that Marshall and Cunningham did not participate in the provision of treatment to Carthen. The evidentiary materials before the court demonstrate that medical personnel made all decisions relative to the course of treatment provided to Carthen and that they provided treatment to Carthen in accordance with their professional judgment upon assessment of his condition.

In light of the foregoing, defendants Marshall and Cunningham can be held liable for decisions of medical personnel only if their actions bear a causal relationship to the purported violation of Carthen's constitutional rights. To establish the requisite causal connection and therefore avoid entry of summary judgment in favor of defendants Marshall and

10

Cunningham, Carthen must present sufficient evidence which would be admissible at trial of either "a history of widespread abuse [that] put[] [the defendant] on notice of the need to correct the alleged deprivation, and [he] fail[ed] to do so . . . ." or "a . . . custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or . . . facts [that] support an inference that [Hetzel] directed the [facility's health care staff] to act unlawfully, or knew that [the staff] would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted).  A thorough review of the pleadings and evidentiary materials submitted in this case demonstrates that Carthen has failed to meet this burden.

The record before the court contains no probative evidence to support an inference that Marshall or Cunningham directed medical personnel to act unlawfully or knew that they would act/acted unlawfully and failed to stop such action.  In addition, Carthen has presented no evidence of obvious, flagrant or rampant abuse of continuing duration in the face of which Marshall and Cunningham failed to take corrective action; instead, the undisputed medical records indicate that Carthen had continuous access to medical personnel and received treatment for his condition.  Finally, the undisputed evidentiary materials submitted by the defendants demonstrate that the challenged course of medical treatment did not occur pursuant to a policy enacted by Marshall or Cunningham.  Thus, the requisite causal connection does not exist in this case and liability under the custom or policy standard is not warranted. *Cf. Employment Div. v. Smith,* 494 U.S. 872, 877, 110 S.Ct. 1595, 108 L.Ed.2d

876 (1990); *Turner v. Safely,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Summary judgment is therefore due to be granted in favor of defendants Marshall and Cunningham.

### C.  The Medical Defendants

Carthen asserts that during his previous incarceration at the Montgomery County Detention Facility in 2009 medical personnel provided inadequate treatment for injuries he suffered in an automobile accident which occurred several weeks prior to his entering the facility.  *Complaint - Doc. No. 1* at 3-4.  Specifically, Carthen complains that Dr. Bates refused to prescribe him narcotics for management of his pain, failed to perform x-rays or radiological scans upon his transfer to the facility and cancelled a follow-up appointment at a free-world hospital.  Carthen likewise argues that Nurse Strickland and Nurse Hughley failed to ensure the provision of desired pain medication.  The medical defendants adamantly deny they acted with deliberate indifference to Carthen's medical needs and, instead, maintain that Carthen received appropriate treatment for his injuries.

To prevail on a claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that the defendants acted with deliberate indifference to his serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986).  Specifically, medical personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*,

429 U.S. at 106, 97 S.Ct. at 292; *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995)

(citation and internal quotations omitted) (As directed by *Estelle*, a plaintiff must establish

"not merely the knowledge of a condition, but the knowledge of necessary treatment coupled

with a refusal to treat or a delay in [the acknowledged necessary] treatment."

> That medical malpractice-negligence by a physician-is insufficient to form the basis of a claim for deliberate indifference is well settled. *See Estelle v. Gamble,* 429 U.S. 97, 105-07, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir.1995). Instead, something more must be shown. Evidence must support a conclusion that a prison physician's harmful acts were intentional or reckless. *See Farmer v. Brennan,* 511 U.S. 825, 833-38, 114 S.Ct. 1970, 1977-79, 128 L.Ed.2d 811 (1994); *Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11th Cir. 1996) (stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Adams,* 61 F.3d at 1543 (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. Dekalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1191 n. 28 (11th Cir.1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *Qian v. Kautz,* 168 F.3d 949, 955 (7th Cir.1999) (stating "deliberate indifference" is synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

In order to properly establish "deliberate indifference to [a] serious medical need . .

. , Plaintiff[] must show:  (1) a serious medical need; (2) the defendants' deliberate

indifference to that need; and (3) causation between that indifference and the plaintiff's

injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009).  When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner).  Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference).  Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

> In articulating the scope of inmates' right to be free from deliberate indifference, . . . the Supreme Court has . . . emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' *Estelle*, 429 U.S. at 105, 97 S.Ct. at 291; *Mandel*, 888 F.2d at 787.  Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers*, 792 F.2d at 1058 (citation omitted).  Mere incidents of negligence or malpractice do not rise to the level of constitutional violations.  *See Estelle*, 429 U.S. at 106, 97

14

S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel*, 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference).   Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment.   *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir. 1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *Taylor*, 221 F.3d at 1258 (citation and internal quotations omitted) (To show deliberate indifference to a serious medical need, a plaintiff must demonstrate that [the] defendants' response to the need was more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law.").   Moreover, "as *Estelle* teaches, whether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment."   *Adams*, 61 F.3d at 1545; *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."); *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) (mere fact inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (prison medical personnel do not violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with that of the inmate-patient).   Self-serving statements by a

plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records. *See Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990).

The affidavits filed by the medical defendants address the allegations made by Carthen. A thorough review of the evidentiary materials filed in this case demonstrates that these affidavits are corroborated by the objective medical records compiled contemporaneously with treatment provided to Carthen with respect to the instant claim of deliberate indifference. In his initial affidavit, Dr. Bates provides the following information regarding treatment provided to Carthen upon his confinement in the Montgomery County Detention Facility:

> Mr. Carthen was involved in a motor vehicle accident on February 15, 2009 and was positive for marijuana and alcohol. He sustained multiple injuries and was treated and hospitalized [at Baptist Hospital] until March 21, 2009. He was then released to the Montgomery County Detention Facility. He was discharged [from the hospital] on HCTZ [hydrochlorothiazide - a diuretic], Neurontin [an anticonvulsant], Prednisone [a corticosteroid used to reduce swelling], and Lortab [a narcotic pain reliever]. [Upon his arrival at the detention facility, Carthen] was placed in the infirmary where he was under 24 hour continuous observation and had access to health care professionals 24 hours a day, 7 days a week. [Carthen remained in the facility's infirmary until May 6, 2009.] He was also given an extra mattress to help with his discomfort and given Tylenol or Motrin at therapeutic doses [for pain relief]. Such dosing should not be confused with the over the counter dosing, as it is considerably higher. We also obtained baseline laboratory work on March 23, 2009. Mr. Carthen was placed on daily [meidcal visits] and daily [checks of his] vital signs. The patient, although uncomfortable, did not appear to be in any severe pain . . . . The patient was seen on multiple occasions [by medical personnel] during his stay at the facility. He was treated for depression after he became depressed about the death of the passenger in the vehicle he was driving. [The passenger was Carthen's brother.] The patient was not sent back to the [free-world] hospital for a follow up as he remained stable throughout his stay [at

16

the Montgomery County Detention Facility] and was seen on multiple occasions by the staff and myself.  It is my opinion that Mr. Carthen received appropriate medical care throughout his stay at the Montgomery County Detention Facility.

*Attachment 1 to the Special Report of the Medical Defendants (Aff. of Dr. Johnny E. Bates) -*

*Doc. No. 27-2* at 1-2.

In a subsequent affidavit, Dr. Bates further addresses Carthen's allegations as follows:

At the time [Carthen] was transferred from the hospital to Montgomery County Detention Facility, we did not have a discharge summary [indicating medication history].  Therefore, we did not know what his medications were.  We immediately started the patient on Tylenol for pain.  This was changed fairly quickly to Motrin 800mg PO BID [meaning the dosage was to be taken by mouth two times a day].  Based upon the patient's complaints and physical examination the Motrin seemed to be adequate for pain management.  This was also consistent with expected pain levels for this condition more than a month after his injury.

Upon receiving the hospital discharge summary we learned that his discharge medications were as follows:  HCTZ 25mg po daily, Neurontin 300mg, Prednisone 10mg and 5 mg to be tapered, and Lortab 10 mg.  As explained above, the Motrin seemed more than an adequate substitute for the Lortab.  Lortab is a narcotic, which is easily susceptible to abuse, and its use is avoided in jails and prisons where at all possible.  In this case, the Motrin was an appropriate substitute for the Lortab.  The Prednisone was continued for the duration ordered.  [Upon expiration of the hospital's prescripted time for the Prednisone,] [t]here was no need for continued use.

The HCTZ was discontinued due to the fact that the inmate was emaciated and normotensive.  HCTZ was felt to be contraindicated in this person due to malnutrition [upon his arrival at the facility] and its propensity to cause further dehydration and electrolyte abnormalities.  The Neurontin was not given as it was not indicated.  The patient did not suffer from Herpes or Seizure disorder.

The patient was placed on daily vital signs and we obtained baseline laboratory studies on his arrival.  He was also placed on double portions of food and given a double mat and bottom bunk [as special accomodations].

17

*Exhibit A to the Supplemental Special Report of the Medical Defendants (Aff. of Dr. Johnny E. Bates) - Doc. No. 39-1* at 1-2.

Under the circumstances of this case, the court concludes that the course of treatment undertaken by the medical defendants in addressing Carthen's injuries and resulting pain did not violate his constitutional rights. Upon his arrival at the Montgomery County Detention Facility, Dr. Bates admitted Carthen to the infirmary for continuous monitoring of his condition. Dr. Bates initially ordered Tylenol for Carthen's complaints of pain but promptly changed the prescription to 800mg of Motrin two times per day. Dr. Bates, in accordance with his medical experience and professional judgment, chose to prescribe Motrin rather than continue Carthen's prescription for Lortab as the latter is a narcotic "easily susceptible to abuse[.]" *Exhibit A to the Supplemental Special Report of the Medical Defendants (Aff. of Dr. Johnny E. Bates) - Doc. No. 39-1* at 2. In monitoring Carthen during his confinement, Dr. Bates formed the opinion that the prescribed dosage of Motrin adequately controlled Carthen's pain. The daily medical documentation logs maintained during Carthen's confinement in the infirmary and the sick call request forms submitted by Carthen each support this determination. Specifically, the daily logs indicate that Carthen made no complaints to the attending nurses during their evening rounds. *Attachment 3 to the Special Report of the Medical Defendants - Doc. No. 27-3* at 40, 42, 47, 49 and 52. Morever, in the sick call request forms, Carthen routinely requests renewal of his prescription for Motrin advising that the Motrin served to "ease [the] pain." *Id*. at 24-30.

The medical records therefore demonstrate that the jail's medical personnel consistently monitored Carthen's condition, performed frequent evaluations of his condition, prescribed and dispensed medication for pain relief, referred him for mental health treatment and issued medical profiles to aid in his recovery. The medical care Carthen received was certainly not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to the fundamental fairness." *Harris*, 941 F.2d at 1505. The allegations presented by Carthen simply fail to establish deliberate indifference by the defendants. *Garvin*, 236 F.3d at 898 (difference of opinion regarding manner in which condition should be treated fails to demonstrate a constitutional violation); *Adams*, 61 F.3d at 1545-1546 (Whether medical personnel "should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis" on which to ground constitutional liability. In addition, the inmate's allegation that his prison physician did not diligently pursue alternative means of treating condition "did not 'rise beyond negligence'. . . to the level of deliberate indifference."); *Hamm*, 774 F.2d at 1505 (inmate's desire for some other form of medical treatment does not constitute deliberate indifference violative of the Constitution); *Franklin*, 662 F.2d at 1344 (simple divergence of opinions between medical personnel and inmate-patient do not violate the Eighth Amendment).

It is undisputed that Carthen received continuous medical care for his condition. It is likewise evident that Dr. Bates rendered treatment to Carthen in accordance with his

19

professional judgment.  Although Carthen argues the medical defendants should have prescribed stronger medication to alleviate his pain, ordered additional radiological images and referred him to a free-world hospital for evaluation, well-settled law directs that Carthen's mere desire for different modes of medical treatment does not constitute deliberate indifference.  In addition, Carthen has failed to present any evidence which indicates that the medical defendants knew that the manner in which they provided treatment created a substantial risk to Carthen's health and that with this knowledge consciously disregarded such risk.  The record is therefore devoid of evidence, significantly probative or otherwise, showing that the medical defendants acted with deliberate indifference to Carthen's medical needs.  Consequently, summary judgment is due to be granted in favor of defendants Bates, Strickland and Hughley.  *Carter*, 352 F.3d at 1350.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motions for summary judgment be GRANTED;

2.  Judgment be GRANTED in favor of the defendants;

3.  This case be dismissed with prejudice; and

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before **May 28, 2013**, the parties may file objections to the Recommendation.  Any objections filed must specifically identify the findings in the

Magistrate Judge's Recommendation to which a party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a *de novo* determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.   *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).   *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 13th day of May, 2013.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE

21